**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| In re: | Chapter 11 |
| WINC, INC., et al. | Case No. 22-11238 (LSS) |
|  | (Jointly Administered) |
| Debtors.[1] |  |
|  |  |
| BRIAN RYNIKER, solely in his capacity as CREDITOR TRUSTEE OF THE CLUB W CREDITOR TRUST, |  |
|  |  |
| Plaintiff, | Adv. Proc. No. 24-          (LSS) |
| v. |  |
| AMC USA Inc, |  |
| Defendant. |  |

**COMPLAINT TO AVOID AND RECOVER TRANSFERS PURSUANT TO 11 U.S.C. §§ 547, 548, AND 550 AND TO DISALLOW CLAIMS PURSUANT TO 11 U.S.C. § 502**

Brian Ryniker, solely in his capacity as Creditor Trustee for the Club W Creditor Trust (the "Plaintiff"), by and through his undersigned counsel, files this complaint (the "Complaint") to avoid and recover transfers against AMC USA Inc (the "Defendant") and to disallow any claims held by Defendant. In support of this Complaint, Plaintiff alleges as follows:

**NATURE OF THE CASE**

1. Plaintiff seeks to avoid and recover from Defendant, or from any other person or entity for whose benefit the transfers were made, all (a) preferential transfers of property of one or

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtors' federal tax identification number, are: Winc, Inc. (8690); BWSC, LLC (0899); and Winc Lost Poet, LLC (N/A).

1

more of the Debtors (collectively, the "Debtors")[2] made during the ninety (90) day period prior to the commencement of the Debtors' bankruptcy proceedings pursuant to sections 547 and 550 of chapter 5 of title 11 of the United States Code (the "Bankruptcy Code") and, subject to proof, (b) transfers that may have been fraudulent conveyances pursuant to sections 548 and 550 of the Bankruptcy Code.

2. In addition, Plaintiff seeks to disallow, pursuant to sections 502(d) and (j) of the Bankruptcy Code, any claim that Defendant has filed or asserted against the Debtors or that has been scheduled for Defendant. Plaintiff does not waive but hereby reserves all of its rights and the rights of the Debtors to object to any such claim for any reason, including, but not limited to, any reason set forth in sections 502(a) through (j) of the Bankruptcy Code.

## JURISDICTION AND VENUE

3. The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334(b). The underlying chapter 11 bankruptcy case is administered under the caption *In re: Winc, Inc. et al,* Case No. 22-11238 (LSS).

4. This adversary proceeding is a "core" proceeding to be heard and determined by the Court pursuant to 28 U.S.C. § 157(b)(2), and the Court may enter final orders for matters contained herein.

5. Venue is proper in the District of Delaware pursuant to 28 U.S.C. § 1409(a).

6. The statutory and legal predicates for the relief sought herein are sections 502, 547, 548, and 550 of the Bankruptcy Code and Rules 3007 and 7001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

---

[2] The transferring Debtor is listed on Exhibit A attached hereto.

7. Pursuant to Local Bankruptcy Rule 7008-1, Plaintiff states that he consents to the entry of final orders or judgments by the Court if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

## PROCEDURAL BACKGROUND

8. On November 30, 2022 (the "Petition Date"), each of the Debtors commenced a voluntary case under chapter 11 of the Bankruptcy Code (the "Chapter 11 Cases").

9. Following the Petition Date, the Debtors remained in possession of their assets and continued to operate and manage their businesses as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code to implement the wind down of the Debtors' operations and the liquidation of the Debtors' assets.

10. On August 3, 2023, the Court entered its Order Approving and Confirming the Combined Disclosure Statement and Joint Chapter 11 Plan of Winc, Inc. and its Affiliated Debtors (the "Confirmation Order") [Docket No. 457], which confirmed the Combined Disclosure Statement and Joint Chapter 11 Plan of Winc, Inc. and its Affiliated Debtors (the "Plan")[3] [Docket No. 444].

11. Pursuant to the Plan, on the Effective Date, the Retained Causes of Action vested in and were assigned to the Creditor Trust, including but not limited to,

> all Avoidance Actions and all Claims under chapter 5 of the Bankruptcy Code, other than the Transferred Chapter 5 Claims (as defined in the APA); [and] (b) direct or derivative Claims or Causes of Action against any and all current and/or former officers, directors, stockholders, members, managers, employees, Affiliates, or insiders of the Debtors, including but not limited to for breach of fiduciary duty or aiding and abetting breach of fiduciary duty, or under and pursuant to any D&O Liability Insurance Policy or fiduciary insurance policy (including for bad faith) maintained by the Debtors.

---

[3] Capitalized terms not defined herein have the meaning set forth in the Plan.

12. The Plan authorized the Creditor Trustee to "prosecute and settle any Claims of the Estates, including but not limited to Retained Causes of Action . . . ." The Confirmation Order appointed Brian Ryniker as the Creditor Trustee. The Effective Date occurred on August 9, 2023. [Docket No. 462.]

13. As explained below, pursuant the Plan, General Unsecured Claims, among others, comprised an impaired class of creditors that are at not expected to be paid in full.

## THE PARTIES

14. Plaintiff Brian Ryniker is the duly authorized Creditor Trustee of the Club W Creditor Trust. Plaintiff is a citizen of New York.

15. Upon information and belief, Defendant was, at all relevant times, a vendor or creditor that provided goods or services to or for the Debtors. Upon further information and belief, at all relevant times, Defendant's principal place of business is located at 1412 Broadway Rm 402, New York, NY 10018. Plaintiff is informed and believes that Defendant is a global transportation and shipping company that specializes in the wine and spirits industry residing in and subject to the laws of the State of New York.

## FACTUAL BACKGROUND

16. Winc was wine manufacturer and distributor that sold proprietary wine products through the traditional wholesale channel (distributor – retailer – consumer) and through an on-line direct-to-consumer ("DTC") channel. Winc's primary source of sales was through its DTC channel, which sold wines direct to consumers through various websites. The DTC channel operated on a subscription basis, pursuant to which members paid monthly fees to Winc and earned credits that could be redeemed for wines.

4

17. Winc lost money every quarter of its existence. Through February 2021, Winc's cumulative losses exceeded $57 million. Almost every year, Winc was forced to find investors to fund these losses, but Winc never raised enough capital to fix the underlying problems of its business.

18. Winc's customer churn rate was exorbitantly high. In 2020, Winc's customer retention rate was approximately 30%. At the time of Winc's November 2021 IPO, Winc represented that its average monthly consumer retention rate—i.e., the customers buying in one month who returned to buy in the next month—was just 91.8%, meaning that almost 10% of its customers left each month. For the cohort of customers on-boarded in 2018, for example, revenues decreased by 22% in 2019 and another 41% in 2010. From the 2020 cohort—customers who on-boarded in the COVID-19 pandemic year—the revenue decreased by 36% in 2021.

19. Not surprisingly, Winc experienced significant growth beginning in March 2020 as the COVID-19 pandemic forced consumers to "shelter in place," restricting their ability to purchase wines at retain outlets. However, although Winc's DTC revenue soared during the period from April 2020 through August 2020, Winc was still EBITDA negative, losing almost $1 million.

20. The Debtors were forced to turn to marketing an IPO in October 2021 in an attempt to salvage the company amongst its liquidity woes. The resulting $20 million raise (less after fees and costs) only allowed the business to continue through the Petition Date, when the Debtors finally filed for bankruptcy

21. During the ninety (90) days before the Petition Date, that is between September 1, 2022, and November 30, 2022 (the "<u>Preference Period</u>"), the Debtors continued to operate their businesses and transferred property of the Debtors, either by checks, cashier checks, wire transfers, ACH transfers, direct deposits, credit card payment, or otherwise to various entities.

22. During the course of their relationship, the Debtors and Defendant entered into agreements, which are evidenced by invoices, communications and other documents (collectively, the "Agreements"). The Agreements concerned and related to the goods and/or services provided by Defendant to the Debtors. The Debtors' payments to the Defendant during the Preference Period are set forth on the Statement of Account, which is attached as Exhibit A hereto and incorporated by reference.

23. The Debtors made transfer(s) of an interest of the Debtors' property to or for the benefit of the Defendant during the Preference Period through payments aggregating an amount not less than the total set forth on Exhibit A (the "Transfer" or "Transfers"). The details of each Transfer are set forth on Exhibit A. Such details include "Payment Number," "Payment Amount," "Payment Date," "Payment Method", "Debtor Transferor(s)," "Invoice Number," "Invoice Date," and "Invoice Amount."

24. Plaintiff is seeking to avoid all of the transfers of an interest of the Debtors' property made by the Debtors to Defendant within the Preference Period.

25. Plaintiff also performed a due diligence evaluation of the reasonably knowable affirmative defenses available to Defendant, including defenses arising under section 547(c), for which Defendant bears the burden of proof under section 547(g) by a preponderance of evidence.

26. Based upon Plaintiff's own due diligence evaluation of the reasonably knowable affirmative defenses to avoidance of the Transfer(s), Plaintiff has determined that Plaintiff may avoid and recover some or all of the Transfers even after taking into account Defendant's potential affirmative defenses.

27. During the course of this proceeding, Plaintiff may learn (through discovery or otherwise) of additional transfers made to Defendant during the Preference Period. It is Plaintiff's

intention to avoid and recover all transfers made by the Debtors of an interest of the Debtors in property and to or for the benefit of Defendant or any other transferee. Plaintiff reserves its right to amend this original Complaint to include: (i) further information regarding the Transfer(s), (ii) additional transfers, (iii) modifications of and/or revision to Defendant's name, (iv) additional defendants, and/or (v) additional causes of action, if applicable (collectively, the "Amendments"), that may become known to Plaintiff at any time during this adversary proceeding, through formal discovery or otherwise, and for the Amendments to relate back to this original Complaint.

## CLAIMS FOR RELIEF

### COUNT I
**(Avoidance of Preference Period Transfers – 11 U.S.C. § 547)**

28. Plaintiff incorporates all preceding allegations as if fully alleged herein.

29. As more particularly described on Exhibit A attached hereto and incorporated herein, during the Preference Period, one or more of the Debtors made Transfers to or for the benefit of Defendant in an aggregate amount not less than the total listed on Exhibit A hereto, which is $122,126.49.

30. Each Transfer was made from one or more of the Debtors' accounts and constituted a transfer of an interest of the Debtors in property.

31. Defendant was a creditor of the Debtors at the time of each Transfer because it had previously supplied the Debtor(s) with goods and/or services for which the Debtors were obligated to pay following delivery.

32. Each Transfer was to or for the benefit of a creditor within the meaning of section § 547(b)(1) of the Bankruptcy Code because each Transfer either reduced or fully satisfied a debt or debts then owed by the Debtors to Defendant.

33. Each Transfer was made for, or on account of, an antecedent debt or debts owed by the Debtors to Defendant before such Transfers were made, as asserted by Defendant and memorialized in the Agreements, each of which constituted a "debt" or "claim" (as those terms are defined in the Bankruptcy Code) of Defendant prior to being paid by the Debtors as set forth on Exhibit A hereto.

34. Each Transfer was made while the Debtors were insolvent. Plaintiff is entitled to the presumption of insolvency for each Transfer made during the Preference Period pursuant to section 547(f) of the Bankruptcy Code.

35. Each Transfer was made during the Preference Period, as set forth on Exhibit A.

36. As a result of each Transfer, Defendant received more than Defendant would have received if: (i) the Chapter 11 Cases were under chapter 7 of the Bankruptcy Code; (ii) the Transfers had not been made; and (iii) Defendant received payments of its debts under the provisions of the Bankruptcy Code. As evidenced by the Debtors' schedules filed in the underlying bankruptcy case as well as the proofs of claim that have been received to date, the Debtors' liabilities after removing inter-debtor obligations exceed their assets to the point that unsecured creditors will not receive a full distribution from the Debtors' bankruptcy estates.

37. In accordance with the foregoing, each Transfer is avoidable pursuant to section 547(b) of the Bankruptcy Code.

### COUNT II
**(Avoidance of Fraudulent Conveyances – 11 U.S.C. § 548(a)(1)(B))**

38. Plaintiff incorporates all preceding allegations as if fully alleged herein, to the extent they are not inconsistent with the allegations contained in this Second Claim for Relief.

39. To the extent one or more of the Transfers identified on Exhibit A was not made on account of an antecedent debt, was a prepayment for goods and/or services subsequently

received, or was incurred by one Debtor entity but paid for by another Debtor entity without a corresponding intercompany receivable recorded by the Debtor incurring the debt, Plaintiff pleads in the alternative that the Debtor(s) making such transfer(s) did not receive reasonably equivalent value in exchange for such transfer(s) (the "Fraudulent Transfers"); and

    A.    The Debtors were insolvent as of the date of the Fraudulent Transfer(s), or became insolvent as a result of the Fraudulent Transfer(s); or

    B.    The Debtors were engaged, or about to engage, in business or a transaction for which any property remaining with the Debtors was an unreasonably small capital; or

    C.    The Debtors intended to incur, or believed they would incur, debts beyond their ability to pay upon maturity.

40. Based upon the foregoing, the Fraudulent Transfers are avoidable pursuant to section 548(a)(1)(B) of the Bankruptcy Code.

## COUNT III
### (Recovery of Avoided Transfers – 11 U.S.C. § 550)

41. Plaintiff incorporates all preceding allegations as if fully alleged herein, to the extent they are not inconsistent with the allegations contained in this Count.

42. Plaintiff is entitled to avoid the Transfer(s) pursuant to section 547(b) of the Bankruptcy Code and any Fraudulent Transfers pursuant to section 548 of the Bankruptcy Code (collectively, the "Avoidable Transfers").

43. Defendant was the initial transferee of the Avoidable Transfer(s) or the immediate or mediate transferee of such initial transferee or the person for whose benefit the Avoidable Transfer(s) were made.

44. Pursuant to section 550(a) of the Bankruptcy Code, Plaintiff is entitled to recover from Defendant the Avoidable Transfer(s), plus interest thereon to the date of payment and the costs of this action.

## COUNT IV
### (Disallowance of all Claims – 11 U.S.C. § 502(d) and (j))

45. Plaintiff incorporates all preceding allegations as if fully alleged herein, to the extent they are not inconsistent with allegations contained in this Count.

46. Defendant is a transferee of transfers avoidable under sections 547 and/or 548 of the Bankruptcy Code, which property is recoverable under section 550 of the Bankruptcy Code.

47. Defendant has not paid to the Plaintiff the amount of the Avoidable Transfer(s), or turned over such property, for which Defendant is liable under section 550 of the Bankruptcy Code.

48. Pursuant to section 502(d) of the Bankruptcy Code, any and all Claims of Defendant and/or its assignee, against the Debtors' chapter 11 estates or Plaintiff must be disallowed until such time as Defendant pays to Plaintiff an amount equal to the aggregate amount of the Avoidable Transfer(s), plus interest thereon and costs.

49. Pursuant to section 502(j) of the Bankruptcy Code, any and all Claims of Defendant, and/or its assignee, against the Debtors' chapter 11 estates or Plaintiff previously allowed by the Debtors or by Plaintiff, must be reconsidered and disallowed until such time as Defendant pays to Plaintiff an amount equal to the aggregate amount of the Avoidable Transfer(s).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that this Court grant the following relief against Defendant:

A. On Plaintiff's First, Second, and Third Claims for Relief, judgment in favor of Plaintiff and against Defendant, avoiding all of the Avoidable Transfers and directing Defendant

to return to Plaintiff the amount of the Avoidable Transfers, pursuant to sections 547(b), 548, and 550(a) of the Bankruptcy Code, plus interest from the date of demand at the maximum legal rate and to the fullest extent allowed by applicable law, together with the costs and expenses of this action including, without limitation, attorneys' fees;

      B.      On Plaintiff's Fourth Claim for Relief, judgment in favor of Plaintiff and against Defendant disallowing any claims held or filed by Defendant against the Debtors until Defendant returns the Avoidable Transfers to Plaintiff pursuant to sections 502(d) and (j) of the Bankruptcy Code; and

      C.      Granting Plaintiff such other and further relief as this Court may deem just and proper.

Dated: November 29, 2024

**A.M. SACCULLO LEGAL, LLC**

*/s/ Mark T. Hurford*
Anthony M. Saccullo (DE No. 4141)
Mark T. Hurford (DE No. 3299)
Mary Augustine (DE No. 4477)
27 Crimson King Drive
Bear, DE 19701
Telephone: (302) 836-8877
Facsimile: (302) 836-8787
Email: ams@saccullolegal.com
           mark@saccullolegal.com
           meg@saccullolegal.com

*Counsel to the Plaintiff*